Statement of Facts.

## H. J. HEINZ ET AL. v. LUTZ BROTHERS.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 2 OF ALLEGHENY COUNTY.

Argued November 5, 1891—Decided January 4, 1892.
[To be reported.]

1. That the use of a label on his goods by a manufacturer, may be enjoined as an infringement of a label already adopted by another, it is not enough that there may be a possibility of deception in consequence of such use; the offending label must be such that it is likely to deceive persons of ordinary intelligence using ordinary caution.

2. It is not necessary to show that persons have actually been deceived, and led to buy the defendant's goods as the goods of the plaintiff; yet, the fact that the two labels have been in use for some time in the same vicinity and no one has been so deceived, is strong evidence that the defendant's label is not likely to deceive.

3. Each of the labels in question contained a picture of a collection of fruit, and there was a general resemblance between those two pictures; but, upon a comparison of the labels as a whole, in the light of the testimony, defendant's label was adjudged not likely to deceive persons of ordinary intelligence, and the bill was dismissed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 285 October Term 1891, Sup. Ct.; court below, No. 92 January Term 1891, C. P. No. 2, in Equity.

On October 24, 1890, Henry J. Heinz, George H. Prager and Frederick Heinz filed a bill in equity against Jacob Lutz and Julian J. Lutz, doing business as Lutz Brothers, praying for an injunction to restrain the defendants from using on fruit preserves, etc., manufactured and sold by them, a certain label charged to be in imitation of a label previously adopted and used by the plaintiffs to designate goods of their manufacture, and to be calculated to deceive purchasers as to the origin of the goods bearing it; for an account of damages, and for general relief.

A motion for a preliminary injunction having been refused, and the bill answered by the defendants, *Mr. D. F. Patterson* was appointed master.

Statement of Facts.

On April 27, 1891, the master filed his report finding the following facts:

1. Plaintiffs are the owners of the Keystone Pickling and Preserving Works, in the city of Pittsburgh, and for many years have been engaged largely in the business of preserving, packing, shipping and selling fruit preserves, fruit butters, jellies, and the manufacture of fruits known in the trade as sweet goods, as well as pickles and the general line of condiments known as sour goods. They have a large trade in Allegheny county, and throughout the United States.

2. The defendants are engaged in the same business in the city of Allegheny. They have been carrying on their trade in sour goods since 1884, and in sweet goods since January, 1890. They have a large trade in Allegheny county, and generally throughout the country.

3. In 1883, the plaintiffs, or their predecessors in business, adopted for their sweet goods a style of labels of the kind attached to the bill as exhibit A, which they have used continuously ever since, and which they apply to the pails used for packing their sweet goods. The style of pails used for such purpose, and the manner of applying said labels thereto, are shown in exhibit, Plaintiffs' Pail.

4. In 1890, the defendants adopted for their sweet goods a style of labels of the kind attached to the bill as exhibit B, which they have used ever since. The style of pails used in packing defendants' sweet goods, and the manner of applying said labels thereto, are shown in exhibit, Defendants' Pail.

5. The packages or pails used by the respective parties are identical in size, shape, color, kind of pail, and in wooden hoops with which they are bound; but the use of similar packages or pails, for similar purposes, is not, and has not been, confined to the parties to this suit.

6. The base of the plaintiffs' label is longer than its top, thus giving a slight slope to its sides or ends, the width along the top edge being a little more than double the height on a perpendicular central line, and the two bottom corners are lined and colored so as to give the appearance of being turned up. The defendants' label is identical in size, form, and shape, except that it does not present the turned up corners.

7. The plaintiffs' label is composed of the following parts, to wit:

(*a*) A fruit-piece, as it has been termed by the witnesses, consisting of the representation of a variety of different kinds of fruits in their natural colors when ripe, arranged in a particular combination, being cherries, strawberries, blackberries

EXHIBIT A.

EXHIBIT B.

and currants, with their respective stems, etc., a pear, peach, apricot and two plums. This aggregation of fruits occupies the face of the label for about three fourths of its width from the left end or side, and extends from the top to the bottom of the label throughout that distance, except that the upper part of the label, for a distance of about two thirds of its width from the upper left corner, is occupied by a bluish scroll containing "Heinz's," having the upper halves of the letters in blue and the lower halves in black with a dull reddish brown

shading, and the lower part of the label, for a space beginning about one sixth of its width from the lower left corner and extending to a place about one sixth of its width from the right corner, is occupied by a mortise of yellowish color, on which is printed the contents of the package to which the label is intended to be applied, such as " Strawberry Preserves," " Quince Jelly," and the like.

(*b*) The scroll, as above described, containing the name " Heinz's."

(*c*) The mortise as above described, containing the name of the contents of the package.

(*d*) Beginning near the right end of the scroll containing the name " Heinz's," is a half circle extending around within the right upper corner and reaching almost to the right end of the mortise containing the name of the contents of the package. This half circle is tinted of a greenish color, upon which, between the right end of the scroll aforesaid and the upper right corner of the label, are the words "Keystone Brand," in distinct black letters.

(*e*) A complete circle of distinct bright red color located beneath the words " Keystone Brand," under and to the left of the half-circle above described, and to the right of the fruit-piece. Around the upper half of this red circle is the name " R. & J. Heinz," and around the lower half of said circle is the plaintiffs' place of business, " Pittsburgh, Pa.," all in distinct white letters.

(*f*) Within the said red circle, on a round black background, is the representation of a keystone in a light yellowish color, crossed diagonally by a key of bright red color like the surrounding circle ; and upon the keystone in black letters are the words " Keystone Pickling & Preserving Works." A white scroll containing the word " Trade," crosses the circumference of the red circle at the left, and a similar scroll containing the word " Mark," crosses it at the right. The red circle, enclosing the keystone, with their respective letterings, and the key, as above described, constitutes the registered trade-mark of the plaintiffs.

8. The defendants' label represents an aggregation of a variety of fruits in their natural colors. The fruits are for the most part the same kinds as those shown in the plaintiffs' label,

Statement of Facts.

with but slight variation of arrangement; and the fruit-piece occupies the same space on the label as that of the plaintiffs, except that at the bottom it extends entirely to the lower right corner. Above the fruit-piece, and extending something less than two thirds of the width of the label from its upper left corner, is the name "Lutz Bros.," in large white letters with bright red shading. This name occupies substantially the same location on defendants' label as the name of "Heinz's" on plaintiffs' label, but it does not rest upon a scroll; and the difference in color between the letters and the respective backgrounds of the two names gives a decidedly more distinct appearance to the defendants' name, which can be read at a greater distance than the plaintiffs' name on their label. In the place of the greenish tinted half-circle with the words "Keystone Brand" of the plaintiffs' label, the defendants' label is provided with a reddish tinted background with yellowish border, in the form of about one third of a circle, having thereon the words "Diamond Brand" in plain black letters. Under this circular piece, in the location occupied on plaintiffs' label by their trade-mark, is a dark background, on which the words "Trade-Mark" are placed in red letters, under which is the white diamond with the words "Purity Guaranteed" in red letters.

9. I find the following testimony of Henry J. Heinz to contain the facts relating to the origin of the plaintiffs' label, to wit: "I originated this label, so that it might differ from any other labels then in use. I sketched some penciled designs out, went to New York city, and called on a number of artists to ascertain where I could find some one who was a success in the grouping and painting of fruits. I cannot now recall the name of the artist, but arranged to have him proceed with the sketch. I called to see him several times, giving directions and advising, until the sketch was completed. And when the sketch was completed, I then proceeded to Boston to call upon the Forbes Lithograph Co., and contracted for the first label from the original sketch."

10. The defendants have been engaged in the manufacture and sale of the line of goods known as sour goods, for about seven years. In January, 1890, they made arrangements to go into the line of sweet goods, and instructed M. J. Nevins, then the agent of the Forbes Lithograph Co., to have a sketch pre-

pared for a label suitable for such goods. Mr. Nevins exhibited a variety of samples of labels that were made by the company he represented, and amongst them the plaintiffs' label now in suit. The defendants gave Mr. Nevins an idea of the kind of label they desired, and specifically instructed him to avoid imitation of the plaintiffs' label. A sketch was prepared pursuant to the instructions of Mr. Nevins, and submitted to and approved by the defendants. Subsequently, a proof of the label was exhibited to and approved by the defendants; and then the labels of which exhibit B is a sample, were made by said company and put in use by the defendants.

11. Prior to the adoption of either the plaintiffs' or defendants' label, it was common for canners and preservers of fruits to use labels upon their cans and packages, bearing representations of different kinds of fruits; and stock labels provided with fruit-pieces were sold to the trade, having blanks or mortises for the printing of such names and reading matter as the packer or dealer might choose to have printed thereon. But I find no evidence that any label was ever produced prior to the plaintiffs' label, having a fruit-piece consisting of a combination and arrangement of a variety of fruits similar to the fruit-piece of the plaintiffs' label.

12. The plaintiffs have three brands of goods, designated as the Keystone, Standard and Duquesne, indicating the different grades of goods; and the Keystone brand is used by the plaintiffs, and known in the trade to indicate the first quality of plaintiffs' goods.

13. The similarity of the labels has never deceived any one into buying the defendants' goods, under the belief that they were the goods of the plaintiffs.

14. The defendants were not guilty of any fraudulent intention to injure the plaintiffs' trade, or impose their goods upon the public as the goods of the plaintiffs, by the adoption and use upon their packages of labels like the samples marked exhibit B. Whatever inference of such fraudulent intention may be drawn from the similarity of the two labels upon inspection and without explanation, is fully and satisfactorily met by the testimony of Julian J. Lutz and M. J. Nevins, from which I find that the lithograph company which makes the labels of both parties, prepared the defendants' label with full knowledge of

the plaintiffs' label, and pursuant to instructions given by the defendants, in good faith, to prepare their labels in such manner as not to imitate or infringe the plaintiffs' labels.

After making the foregoing findings, the master reported an opinion in part as follows :

Upon the foregoing facts, two principal questions arise for solution ; the latter of which, at least, is a mixed question of law and fact. The first question is, whether or not the plaintiffs have acquired a property right in their distinctive label, which entitles them to protection in its exclusive use ? And, if so, then, has the use of the defendants' label, in the manner they are and have been using it, such tendency to interfere with the full exercise of plaintiffs' rights, and to deceive the public, as to warrant a court of equity in restraining its further use ? Other legal propositions, as well as a careful examination of the labels themselves, are involved in a correct determination of these two principal questions.

1. It is necessary to keep in mind that this is not a suit to restrain the alleged infringement of a trade-mark ; and hence, in my opinion, many of the cases cited, and some of the legal propositions advanced by the learned counsel for the defendants, relating to technical trade-marks, do not apply to this action, which is a proceeding to restrain an alleged unlawful invasion of the plaintiffs' alleged right to the exclusive use of a distinctive label adopted for the identification of their goods. A label, as well as a trade-mark or the good-will of an established business, is a subject matter of exclusive property right ; and when a party has been the first to adopt it, and has established it with the public as the device by means of which his goods are generally identified amongst dealers and consumers, he acquires therein a property right which he is entitled to enjoy to the exclusion of all others. The label may be wanting in some of the essential characteristics of a trade-mark, and may possess properties which forbid its exclusive appropriation as such; but, nevertheless, his exclusive property right therein will be protected from unlawful invasion, as well for his benefit as for the security of the public against imposition. This doctrine has been recognized and expressly announced in so many English and American cases, that it is unnecessary to cite authorities for its support.

In view of the facts relating to the origin, adoption, and establishment of the plaintiffs' label, as found from the practically undisputed evidence in this case, I have no doubt of the plaintiffs' legal right to the exclusive use of labels substantially like the sample marked exhibit A.

2. Have the plaintiffs made out a case to move a chancellor to restrain the defendants from the further use of labels such as the sample marked exhibit B ?

The facts, as I have found them from the evidence, acquit the defendants of the charge of adopting and using such labels with the fraudulent intention and design of deceiving the public and injuring the business of the plaintiffs, and they further show that no actual deception has arisen from the use of the defendants' labels ; but neither proof ·of fraudulent intention to deceive, nor of actual deception, are essential to move ̍a chancellor to enjoin the use of labels that are of a character tending to mislead and deceive the public. The approved test is stated with substantial accuracy in the able brief presented by defendants' counsel, ·and it is, Whether or not there is such similarity in the two labels, and the manner of their use, that persons using such reasonable care and observation as the public generally are capable of using, and may be expected to exercise in the purchase ̍of the kind of goods to which the labels are applied, would be likely to mistake the one for the other ?

In applying this test, I have no doubt that the respective labels are to be considered in their entirety, together with all the instrumentalities connected with their respective uses. The points of similarity and dissimilarity that are likely to strike the eye and impress the mind of the observer, are all to be taken into consideration, such as the names, letters, figures, symbols, colors, shapes, together with their distinctive combinations and their relative arrangements and positions with respect to each other, and the character of the packages to which they are applied, as well as the manner of their application. All these elements enter into the production of the general effect upon the eye and the mind which results in the impression of likeness or dissimilarity.

It is a well-settled rule of law applicable to cases of alleged deceptive likeness of labels, trade-marks, patented designs, and

the like, that the measure of similarity need not be such as is likely to deceive an expert, or tends to deceive an expert; nor need it be such as is likely to deceive the ordinary purchaser who has the opportunity to make a comparison of the devices side by side. On the other hand, a resemblance that might deceive inexperienced children, grossly ignorant people, or such as are carelessly indifferent, is not sufficient to warrant the interposition of a chancellor.

The present chief justice, in the case of Morse v. Worrell, 10 Phila. 168, said : " In determining a question of this kind, some regard must be had to the character of the article, its price, and the average intelligence of the persons who are likely to be its chief purchasers and consumers. When an article is costly, is used principally by persons above the ordinary standard of intelligence, and is likely to be inspected closely, the danger of deception would necessarily be less than in the case of an article of stove-polish, sold at retail for ten cents, and used chiefly by the humbler and more ignorant classes." In the same case, it is said : " What constitutes an infringement is a mixed question of law and fact, often difficult to determine. In such investigations we may be aided to some extent by experts. Much, however, must depend upon an actual inspection of the trade-mark, and of the alleged imitation." Referring to the numerous affidavits showing the judgment of witnesses, on the one side, that the label of the defendant was an imitation of the plaintiffs' trade-mark, calculated to deceive purchasers, and, on the other side, that there was no imitation, and the differences were so radical that no person of average intelligence could be deceived, the learned judge said : " The conclusion to which I have arrived is, that while we will regard such affidavits so far as they aid us and throw light upon the case, the court must at last exercise its independent judgment upon actual inspection of the trade-mark and its alleged imitation. As before observed, this is a mixed question of law and fact. Many of the professed experts may have but crude notions of what in law constitutes a trade-mark, or its violation." . . . .

The weight of opinion, as expressed by the witnesses, is clearly to the effect that a purchaser who is capable of reading, and who would actually read the name and brand on defend-

ants' labels, would not be deceived thereby into the belief that he was buying the plaintiffs' goods; and I am clearly of the opinion that the names and brands must not be excluded from consideration in determining the question of liability to deceive. However, it is a matter of common knowledge, repeatedly mentioned by judges in cases of this character, that features and pictures and objects make a lasting impression on the mind, while the names and words with which they are connected are readily forgotten. . . . .

The defendants' label is a copy of the most striking features of the plaintiffs' label, and the copy of these prominent features is so exact as to require a careful comparison of the two labels side by side, to enable any one not an expert to discover the trifling variations between these distinguishing features. The location of the fruit-pieces on the respective labels, as well as the names, the brands, the trade symbols, the segments, the mortise containing the name of the contents of the package, and their relative arrangements and positions with respect to each other, and to the parts of the label, all taken in connection with the size and shape of the respective labels, and the exact similarity of the packages to which both parties apply their labels, and the manner of their application, have led me to the conclusion that an ordinary purchaser of the kind of goods to which the labels are applied, having a general acquaintance with the plaintiffs' label, would be quite likely, in the exercise of such care and observation as usually attend the purchase of said goods, to be misled into the purchase of goods contained in packages like exhibit Defendants' Pail, including the label, under the mistaken belief that he was buying the plaintiffs' goods. Being so convinced, after careful consideration of the testimony and their respective labels, I am of the opinion that the plaintiffs are entitled to a decree restraining and enjoining the defendants from further use of their label in the manner they are and have been using the same: Dixon Crucible Co. v. Guggenheim, 7 Phila. 408.

I have less hesitation in recommending such decree, when it is considered that it will impose no restriction upon the right of defendants to make, vend and ship their goods. It goes merely to the dress in which they shall be permitted to clothe their productions; being an outfit to the exclusive use of

which, in my judgment, the plaintiffs have clearly established a good title. . . . .

—The master accordingly reported a form of a decree in favor of the plaintiffs, for an injunction but with nominal damages.

Exceptions to the report of the master were filed by the defendants, specifying, inter alia, that the master erred :

1. In finding, that the resemblance between the respective labels of the plaintiffs and defendants is so close as to deceive the ordinary purchaser of the goods.[1]

3. In finding that a decree for the plaintiffs should be entered, against the weight of the evidence, which, as he has already found, is for the defendants.[2]

5. Under all the findings of fact, and under the law as accepted by him in his report, in finding a decree in favor of the plaintiffs.[3]

7. Under all the facts, and under the law as applicable to this case, in not finding and reporting a decree for the defendants.[4]

On April. 27, 1891, the master overruled the exceptions filed, reporting further in connection therewith, as follows :

It is due to the court as well as to counsel that I should state the reasons that have influenced me in overruling the exceptions to my report. The first exception is the only one that has been seriously pressed; and it was argued with earnestness and force, from the testimony and appearance of the labels in dispute, that a customer asking a dealer for Heinz's goods could not be deceived by a package bearing defendants' label, for the reason that the name Lutz Bros. appears thereon plainly and prominently.

In my judgment, this argument fails to meet the injury likely to result from the use of defendants' label. It assumes that the customer is acquainted with the Heinz goods by the Heinz name, whereas the fact is that these goods are identified by the label rather than by the name of the manufacturer. It seems plain to me that no one could be deceived by the defendants' label, unless he had some previous knowledge of the goods identified by the plaintiffs' label; any more than he could be deceived by a simulated signature or face, unless he had some

Opinion of Court below.

acquaintance with the genuine.   Now, if a customer who had knowledge of the goods identified by the plaintiffs' label, should ask for such goods, not as Heinz's goods, but as the goods bearing a label such as he had observed upon the packages of the goods he desired to purchase, and should be shown a package bearing defendants' label, it seems to me that he would almost certainly accept it as the goods he desired, unless he remembered the particular fact that Heinz, and not Lutz, was the name of the manufacturer of the goods that he was seeking.   If he did not remember that fact, he would be a purchaser who identifies the plaintiffs' goods by the name of the manufacturer, and not by the name of the label, of which the name Heinz's is a part much less likely to be remembered than the other more prominent features.

The fact, as I have found from the evidence, is that plaintiffs' goods are generally identified in the trade by the label, and not simply by the name of the manufacturer which forms a feature of the label.   The name, like any of the other less prominent features of the. label, is liable to be forgotten by persons who have a general acquaintance with the plaintiffs' label as a whole; and the defect in the argument of defendants' learned counsel, in my judgment, is that it gives chief and controlling prominence to a feature of the label, to wit, the name, which is not in fact among the features most likely to be impressed upon the mind of the ordinary purchaser.

I have heretofore mentioned the features of plaintiffs' label which would likely be impressed upon the mind of the purchaser, and they do not include the name, which might be changed without attracting his notice ; and hence the liability to deception by reason of the defendants' use of the very features of plaintiffs' label which an ordinary customer is most likely to bear in mind.

After argument of the foregoing exceptions before the court in banc, the court, EWING, P. J., on July 11, 1891, filed the following opinion :

This is a close case.   Aside from the master's report and findings, the court would probably have found that the labels of defendant are not likely to deceive the ordinary purchaser. It is easy to see that to the practiced eye of an artist, the labels

are so dissimilar in coloring, in arrangement, in names and devices, that he would suppose that it would be an impossibility to mistake one label for the other. No one that could and would read, could be deceived into taking one for the other.

The master has found from the testimony, that defendants' label was not intended to deceive, and that in fact it has deceived no one. The form of package is a common one for a much longer time than any of the parties have been in business. The general design of the grouping of fruits in high colors such as these labels, rather than in natural colors, the sizes and shapes, are also, to our personal knowledge, common from a time long before these parties were in business. Yet we cannot say that, taking the two labels together, the master is wrong in finding that in general effect on the eye, and in the general impression given, the labels are so similar as to be liable to deceive the ordinary retail purchaser of such goods.

The master finds the leading fruit of the labels to be a pear; the testimony supports his finding: a countryman might mistake it for a squash, at least if he never saw the original of the pear, in form and color; and yet they are precisely the same in each label; to the casual unskilled observer the general arrangement is the same. It should not be difficult to make the necessary changes. The exceptions to the master's report are dismissed.

WHITE J., noted his dissent.

—On September 16, 1891, a formal decree was entered granting a perpetual injunction in accordance with the prayer of the bill, and directing that the defendants pay to the plaintiffs the sum of six cents damages and costs. Thereupon the defendants took this appeal, specifying that the court erred:

1–4. In overruling the defendants' exceptions.[1 to 4]

*Mr. W. P. Potter* (with him *Mr. W. A. Stone*), for the appellants:

1. The assignments of error relate solely to the sustaining by the court of the inference which the master drew from his findings of fact. They complain only of the approval by the court of the master's opinion, based upon his own inspection and comparison of the labels, that some one might be deceived by the resemblances between them, notwithstanding the fact that

no one ever has been deceived, and that the weight of the testimony is decidedly against the probability that any one ever will be deceived. We have to meet, in this case, simply the individual judgment of the master, unsustained by the evidence.

2. There is but little dispute as to the rule of law governing this class of cases. The rule, simply stated, is that the resemblance between two trade-marks must be such that an ordinary purchaser of the goods would be deceived by the similarity between them: Gilman v. Hunnewell, 122 Mass. 139; Desmond's App., 103 Pa. 126; McLean v. Fleming, 96 U. S. 245; Tallcot v. Moore, 6 Hun 106; Popham v. Cole, 66 N. Y. 69; Merrimac Co. v. Garner, 4 E. D. Smith 387; Dixon Crucible Co. v. Guggenheim, 7 Phila. 408; Morse v. Worrell, 10 Phila. 168. Heinz v. Brueckmann, 134 Pa. 498, is not a precedent in favor of plaintiffs. In that case the resemblance was striking in a general way; in this, the striking features are the points of difference. The bill should have been dismissed: Blackwell v. Crab, 36 L. J. Ch. 504.

*Mr. Thomas W. Bakewell* (with him *Mr. W. Bakewell* and *Mr. B. C. Christy*), for the appellees:

1. Is the plaintiffs' label of such a nature as to be capable of exclusive appropriation? As suggested by the master, confusion of thought has arisen in this case through failure to distinguish between the law of labels and the law of trade-marks or trade-names. The distinction between them is recognized clearly by the courts, and is an important one. The subject matter of the present suit is not the Keystone trade-mark of the plaintiffs, nor is it any one particular mark or picture by itself; but it is the label, comprising in combination the colored fruit-piece, the scrolls, segments, mortises, the position of the trade symbol, the circle surrounding it, and the arrangement and style of the printed words, all together going to make up a unitary design having a striking and peculiar general appearance.

2. It is no answer to a suit on a label of this description, to assert that the individual parts of the design, when separately considered, are old or of common right to use. If a new and original combination of them is made, the combination, considered in its general effect on the eye and memory, is the subject

of exclusive appropriation by a manufacturer as a mark of his goods: McLean v. Fleming, 6 Otto 245; Sawyer v. Horn, 1 Fed. R. 24; Dixôn Crucible Co. v. Guggenheim, 7 Phila. 408 (2 Brewst. 321); Carbolic Soap Co. v. Thompson, 25 Fed. R. 625; Leclanche Battery Case, 23 Fed. R. 276; Frese v. Bachof, Price & Stewart's Trade-mark Cases, 31; Landreth v. Landreth, 22 Fed. R. 41; Tobacco Co. v. Tobacco Works, 46 Fed. R. 289; Shaw Stocking Co. v. Mack, 21 Blatch. 1; American Button Co. v. Anthony, 15 R. I. 338. The facts found by the master entirely sustain the plaintiffs' exclusive right, by origination and adoption, to the label in question.

3. Have the defendants infringed this label? The test of infringement is similarity in general appearance, such as would be likely to mislead one in the ordinary course of purchasing the goods: McLean v. Fleming, 96 U. S. 245. It is not necessary that the entire label or design be used by the defendants; it is sufficient if a material part be wrongfully appropriated: Atlantic Milling Co. v. Robinson, 20 Fed. R. 217; Gillott v. Esterbrook, 48 N. Y. 374 (8 Am. Rep. 553). Nor is a difference in the details material, if the general effect be the same: Dixon Crucible Co. v. Guggenheim, 7 Phila. 408 (2 Brewst. 321). The character and average intelligence of the persons who ordinarily purchase the goods sold in retail grocery stores, is to be considered in passing upon a trade-mark such as this: Liggett v. Hynes, 20 Fed. R. 883. A defendant cannot avoid infringement by using different words and names; Dixon Crucible Co. v. Guggenheim, supra; Sawyer v. Horn, 1 Fed. R. 24; Hegeman v. O'Byrne, 9 Daly 264; or, by substituting his own name for that of the plaintiff: Pratt's App., 117 Pa. 401; Menendez v. Holt, 128 U. S. 521; Leonard v. Lubricator Co., 38 Fed. R. 922.

4. If the subject of the suit be a label bearing a picture or a combination of words or pictures, together with some single trade symbol or trade-mark, and the defendant has used the picture or combination, he will be adjudged an infringer, if the general effect has been copied, even though the particular trade symbol or trade-mark be omitted and the defendant's own mark or symbol be substituted: Royal Baking Powder Co. v. Davis, 26 Fed. R. 293; Moxie Nerve Food Co. v: Beach, 33 Fed. R. 248; Heinz v. Brueckmann, 134 Pa. 498; Conrad

v. Brewing Co., 8 Mo. App. 277 ; Southern White Lead Co.
v. Cary, 25 Fed. R. 125 ; Tobacco Co. v. Tobacco Works, 46
Fed. R. 289.  It need not be shown that there has been any
actual intent to deceive : McLean v. Fleming, 96 U. S. 245 ;
or that there has been actual deception : Dixon Crucible Co.
v. Guggenheim, supra ; Johnston v. Ewing, L. R. 7 App.
Cas. 219.  The master has found as a fact that defendants'
label is likely to mislead, and this finding should not be dis-
turbed except for manifest error : Roddy's App., 99 Pa. 12 ;
Sproull's App., 71 Pa. 138 ; Burton's App., 93 Pa. 214.

OPINION, MR. CHIEF JUSTICE PAXSON :

This bill was filed by the plaintiffs in the court below, to re-
strain the defendants from selling packages of fruit preserves,
fruit butters, or jellies having thereon any labels resembling
the labels of the plaintiffs.  The latter does not claim that
there has been a violation of a technical trade-mark, but that
the labels used by defendants so closely resemble those of the
plaintiffs that purchasers are likely to be deceived.  Both par-
ties, plaintiffs and defendants, are engaged in the same line of
business, the former in the city of Pittsburgh, the latter in the
city of Allegheny, and both have adopted and used a particular
style of label to mark their goods.  In addition, the defendants
use the same style of pail in which to pack their goods as the
one used by plaintiffs.  This style of pail, however, was ad-
mitted to be in common use by other persons engaged in the
same trade, and it is not a feature in the case.

No fault is found with the learned master's findings of fact.
It is only his conclusions from facts found that are assailed.

Before proceeding to discuss the law of the case, it is proper
to refer to some of the master's findings of fact.

In paragraph 10 he finds : " The defendants have been en-
gaged in the manufacture and sale of the line of goods known
as sour goods for about seven years.  In January, 1890, they
made arrangements to go into the line of sweet goods, and in-
structed M. J. Nevins, then the agent of the Forbes Lithograph
Co., to have a sketch prepared for a label suitable for such
goods.  Mr. Nevins exhibited a variety of samples of labels
that were made by the company he represented, and among
them the plaintiffs' label now in suit.  The defendants gave

Opinion of the Court.

Mr. Nevins an idea of the kind of label they desired, and specifically instructed him to avoid imitation of plaintiffs' labels. A sketch was prepared pursuant to the instructions of Mr. Nevins, and submitted to and approved by the defendants."

In paragraph 13 he finds: " The similarity of the labels has never deceived any one into buying the defendants' goods, under the belief that they were the goods of the plaintiffs."

In paragraph 14 he finds: " The defendants were not guilty of any fraudulent intention to injure the plaintiffs' trade, or impose their goods upon the public as the goods of the plaintiffs, by the adoption and use upon their packages of labels like the sample marked exhibit B.  Whatever inference of such fraudulent intention may be drawn from the similarity of the two labels upon inspection and without explanation, is fully and satisfactorily met by the testimony of Julian J. Lutz and M. J. Nevins, from which I find that the lithograph company which makes the labels of both parties prepared the defendants' label, and pursuant to instructions given by the defendants in good faith, to prepare their labels in such manner as not to imitate or infringe the plaintiffs' labels."

A large number of witnesses were examined before the master, and the weight of the testimony clearly is that a person of ordinary intelligence would not be likely to be deceived or misled by the defendants' labels.  The master finds that no one in fact has been deceived.  In regard to the testimony, he says in his opinion : " The weight of opinion, as expressed by the witnesses, is clearly to the effect that a purchaser who is capable of reading, and who would actually read the name and brand on defendants' labels, would not be deceived  thereby into the belief that he was buying the plaintiffs' goods," etc.  Notwithstanding this, the learned master decides by an inspection of the two labels, that that of the defendants is an imitation, and calculated to deceive a purchaser.  That the learned judge below felt the pinch of this part of the case is apparent from the opening sentence of his opinion, where he says : " This is a close case.  Aside from the master's report and findings, this court would probably have found that the labels of defendants are not likely to deceive the ordinary purchaser."

It is not enough that there may be a possibility of deception. The offending label must be such that it is likely to deceive

persons of ordinary intelligence. It is not necessary to show that persons have been deceived, yet the finding of the master that no one has been deceived, although defendants' label has been in use for some time in the same vicinity as that of the plaintiffs, is certainly strong evidence in support of defendants' allegation that their label is not likely to deceive.

Dixon Crucible Co. v. Guggenheim, 7 Phila. 408, decided by the writer when sitting in the Common Pleas of Philadelphia, has been so generally accepted as law that I may be excused for giving a brief extract from the opinion in that case:

"That a similarity between two trade-marks used by different manufacturers for their goods, although of such a character as to induce a belief in the mind of the public that they belong to and designate the goods of the same manufacturer or trader, is not of itself sufficient ground for the prohibition of the use of such trade-mark by him who did not first adopt it. That similarity, to entitle the originator to the protection of the law, must be such as to amount to a false representation, not alone that the two articles have the same origin, but that the goods to which the simulated mark is attached, are the manufacture of him who first appropriated the trade-mark."

A court of equity will not restrain a person from using a device, on the ground that it infringes plaintiffs' trade-mark, unless it is so similar in appearance that any person using such reasonable care and observation as the public generally are capable of using, and may be expected to exercise, would mistake the one for the other: Gilman v. Hunnewell, 122 Mass. 139; Desmond's App., 103 Pa. 126. In trade-marks, in order to entitle the plaintiffs to relief by injunction, the resemblance must be such that ordinary purchasers, dealing with ordinary caution, are likely to be misled: McLean v. Fleming, 96 U. S. 245. The court is not bound to interfere where ordinary attention will enable the purchaser to discriminate: Tallcot v. Moore, 6 Hun 106. And it was said by the Court of Errors and Appeals of New York in Popham v. Cole, 66 N. Y. 69: "The question in this, as in every other similar case, is whether there is such resemblance between the two as to deceive the purchaser using reasonable caution." So in the case of Merrimac Co. v. Garner, 4 E. D. Smith 387, the court says: "The courts are not bound to interfere when ordinary attention will

Syllabus.

enable a person to discriminate. We must assume that dealers and consumers have ordinary intelligence, and adopt reasonable precautions against imposition and fraud."

An inspection of the respective labels does not impress us as it did the learned master. Both labels are colored, but in every feature except the fruit the colors are widely different. The fruit is of course highly colored, to make it look as luscious as possible; but no one trader in this article has, or can have a monopoly of pears, peaches, cherries, plums, strawberries, etc. Any dealer in fruit has the right to put a picture of these fruits upon his labels, and to make them as attractive as possible, and the fruit in one label is very likely to resemble that in another. The complaint here is in the arrangement. In this there is no doubt a general resemblance, yet with points of difference. But, in that part of plaintiffs' trade-mark which he is entitled to claim as such, there is no resemblance whatever. The two are as unlike as day and night. They differ in style, color, and device. The one is the " Keystone Brand," and the other the " Diamond Brand," and the name of each proprietor is stamped upon his respective label in large letters and in different colors. It is difficult to see how any one with but a glimmering of intelligence could be deceived. We have the fact found that no one has been misled in the past, and we feel quite sure that no one will be deceived in the future.

The decree is reversed and the bill dismissed, at the costs of the appellees.