PITTSBURGH CRUSHED-STEEL CO. v. DIAMOND STEEL CO. et al.

(Circuit Court, E. D. Missouri, E. D. February 7, 1898.)

No. 3,887.

1. TRADE-MARKS—REGISTRATION—ABANDONMENT.

The omission from a registered trade-mark of a feature theretofore sometimes used in connection with it is an abandonment of that feature to the public.

2. SAME—SYMBOLS AND NAMES.

The use of a conventional diamond-shaped figure gives no trade-mark right in the word "Diamond," where the product has not been sold or become known under that name.

3. SAME—INFRINGEMENT.

A trade-mark consisting of a conventional diamond-shaped figure is not infringed by a representation of a rough, irregular, radiant diamond.

This was a suit in equity by the Pittsburgh Crushed-Steel Company against the Diamond Steel Company and others for alleged infringement of a trade-mark, and to restrain alleged unfair competition in trade.

· Paul Bakewell, for complainant.
Seddon & Blair and George H. Knight, for defendants.

ADAMS, District Judge.   This is a bill to enjoin the alleged infringement of complainant's trade-mark, and to restrain the defendants from alleged unfair and unlawful competition in business.   The proof is voluminous, but, after a careful examination, the facts appear to be clear and within a narrow compass.   Without attempting any particular analysis of them, I shall content myself with a succinct statement of the conclusions reached.   The complainant is a limited partnership, organized under and pursuant· to the laws of the state of Pennsylvania, and has been engaged since the year 1889 in the manufacture and sale of certain abradants made of crushed steel, and used for sawing and polishing glass, stone, and other hard substances.   This partnership, early in its career, adopted a trade-mark, consisting of a symbol well known in geometry as a "rhombus" or "lozenge" or conventional diamond, and afterwards affixed it to packages of its product, when prepared for sale, in such way, and with such constancy and persistency, as to now entitle it to the exclusive use of such mark to indicate its ownership of the goods upon which it is affixed.   During the period from 1889 to the institution of this suit, complainant sold large quantities of this product throughout the United States with its said symbol upon the packages.   But its goods have never been known in the trade as "Diamond Steel," and have never been advertised, sold, or offered to be sold under that name, or under any other combination of words embracing the word "Diamond" as a constituent part.   On the contrary, it has always advertised its product, sold it, offered it for sale, and referred to it in the trade as "Crushed Steel," "Pittsburgh Crushed Steel," or "Steel Emery."   In the fall of 1894, after the controversy between the complainant and the defendants in this case began, the complainant changed its stencil used for marking its packages, by cutting therein the word "Diamond" in connection with the symbol; but the record does not show that complainant ever in fact caused this word to be impressed upon any of its packages, even after that date.   The proof shows that upon some of complainant's packages the letter "S" appears within the lines of the geometrical figure, thus: but the pleadings claim nothing for this circumstance, obviously because in the application for registry of its trade-mark, made in the United States patent office of date December 22, 1894, the complainant did not claim this letter "S," and did not register the same as any part of its trade-mark.   By such action or failure to claim the letter, complainant must be held to have abandoned this feature of its mark, if it had ever employed it, to the public, and thereby to have disclaimed any exclusive right to it.   Richter v. Remedy Co., 52 Fed. 455; Id., 8 C. C. A. 220, 59 Fed. 577.

The trade-mark of the complainant, as used upon its packages, and as registered in the patent office of the United States, is as follows:

The proof also shows that, at some time prior to the fall of 1894 (the exact date does not appear), the complainant became the owner of letters patent of the United States for a process for the manufacture of its abradants.

The proof further shows that in January, 1894, certain German citizens, by the names of Marx, Bausch, and Wirts, formed a co-partnership, under the name of Diamant-Stahlwerk, B. Bausch & Co., for the manufacture at Altchemnitz, Germany, of steel abradants, similar to those manufactured in this country by the complainant, as already described, and soon after adopted a trade-mark consisting of a rough, irregular shaped piece of diamond steel, with lines emanating therefrom, intended, doubtless, to represent radiations of light. This trade-mark was registered in Germany in May, 1894, and was afterwards registered in the patent office of the United States at about the same time the complainant's trade-mark was registered. Soon after the formation of this co-partnership in Germany, the firm proceeded to manufacture steel abradants at Altchemnitz, and, seeking a market in this country, sent Marx to New York, where, in January, 1894, he engaged the services of a general agent, by the name of Binney, to handle their product in this country. A consignment of such product soon followed. It was known in Germany as "Diamond Steel," and, on arriving in this country, was so known, handled, advertised, and sold by Binney. It was consigned and handled in bags with the radi-

ant diamond stamped thereon, as already described, and with other prominent letters and marks showing its foreign origin, thus:

"Diamant-Stahlwerk."
"Altchemnitz."

"Diamond Steel No. 1."

The importation marks, "Ausfuhrgut," "Via Hamburg" or "Antwerp," "Made in Germany," etc., in prominent display type, were also impressed upon these packages, in connection with the symbol.

In the fall of 1894, Marx made an engagement with the individual defendants in this case to handle the foreign product of his firm in the western part of the United States. These defendants proceeded to do so in a small way, under the unincorporate name of Diamond Steel Company, and continued so to do until June, 1895, when they caused the defendant corporation to be duly incorporated, under and pursuant to the laws of the state of Missouri. Since then, the defendant the Diamond Steel Company and its officers, who are the individual defendants in this case, have been handling, selling, and offering to sell, to the trade in the western portion of the United States, such German product under the name of "Diamond Steel," and in packages upon which, with the consent of the German company, the radiant diamond, together with the other marks, letters, and symbols already heretofore described, appear as a trade-label. It appears that when defendant's licensors, who are the German co-partners, first introduced their abradants into this country, in the summer of 1894, they wrote some letters, and did other things in relation to their proposed business in this country, showing a purpose to actively compete with the complainant for business here; and, in so doing, it is claimed by the complainant's counsel that they unfairly and unlawfully took advantage of complainant's reputation and business standing to further their ends. It is also claimed that the individual defendants in this case, prior to the incorporation of the defendant company, were guilty of the same misconduct; that, in their efforts to secure business, they unfairly and fraudulently employed an old agent of the complainant company, by the name of Kauffman. This man Kauffman was not in the employment of the complainant, and had not been for a long time.

Now, without particularizing, I will state that after a careful consideration of all this evidence, and of complainant's theory concerning it, I am unable to find any unfair or fraudulent conduct on the part of the defendants or their licensors. I believe that the complainant is attaching too much importance to trifles, and undertakes to weave a mesh of falsehood and deception out of acts, statements, and conduct which are entirely consistent with honest and fair competition. Neither the defendants nor their licensors, the German company, ever represented their goods to be those of the complainant. On the contrary, from the beginning they openly claimed and persistently contended that their goods were of superior quality to those of the complainant. They came into the market, perhaps, as troublesome competitors, but with no fraudulent purpose or false pretenses whatsoever. They were willing to sail under their own colors, and so kept within the limits of fair competition up to the time the evidence was taken in this case that there is not a particle of proof that any purchaser has ever been deceived by them, or that any of their goods have ever been palmed off upon the unwary, as and for the goods of the complainant. A fair and candid consideration of the proof in the case, therefore, convinces me that the defendants have never intended to defraud, and have not defrauded, the complainant, or taken any unfair business advantage of it, and that defendants never intended to deceive the public, and have never done so. The complainant's conduct in the summer and fall of 1894, when the defendants and its licensors first entered the field of competition with it, constitutes, in my opinion, a confirmation of this conclusion. After the complainant knew of the purpose on the part of the German company to bring their goods into the United States, and after it knew that they were offering their goods under the trade-name of "Diamond Steel," it made no complaint on account of the use of such name. Its only complaint was that the defendants and their licensors were infringing the complainant's patent for the process of manufacturing the abradants, and some advertisements were inserted in the press warning the defendants from infringing complainant's patents. This fact, taken in connection with the attempt later made to add the word "Diamond" to complainant's stencil, convinces me that complainant's present contention is something of an afterthought.

The foregoing views dispose of the question of unfair competition. In fact, there was none intended and none practiced by the defendants. The question still remains, however, whether the defendants, by the use of the words "Diamond Steel," in their corporate name, and the same words as the trade-name of their product, have infringed the technical trade-mark of the complainant. The complainant claims that because it has a trade-mark, consisting solely of a geometrical symbol, sometimes described as a conventional diamond, therefore it has a monopoly of the use of the word "Diamond," so descriptive of its mark, as a trade-name; and this, too, notwithstanding the fact that its product has never been sold or offered for sale or known in trade by such descriptive word, and notwithstanding the further fact that it has, by long usage, acquired a different trade-name,—that is, "Crushed

85 F.—41

Steel," "Pittsburgh Crushed Steel," and "Steel Emery." In other words, complainant seeks to maintain a monopoly of one of several undisclosed and unused definitions of its mark as a trade-name for its product. If, under such conditions, complainant is entitled to monopolize the word "Diamond" in any combination, as its trade-name, it may with equal propriety monopolize the other appropriate definitions of its mark, and prevent any competitor from using as a trade-name a combination including the words "Rhombus" and "Lozenge," which it has never employed in connection with its business. I am unable to find any authority for this contention, and, in my opinion, it rests on no solid foundation of principle.

If the complainant's goods had ever been known in the trade as "Diamond Steel," or generally as "Diamond" goods, it would undoubtedly be protected in the use of the word "Diamond" as a trade-name, even though such word nowhere appeared in connection with the symbol of a conventional diamond forming its trade-mark. Its use by a competitor, either as its corporate name or trade-name for its product, under such circumstances, would undoubtedly tend to deceive, and fall within the condemnation of the cases of complainant's counsel. See, especially, Johnson v. Bauer, 82 Fed. 662. The trade-marks of the parties to this suit, as hereinbefore set out, have appeared upon their respective packages of abradants when sold or offered for sale in the market. They present to the eye a totally different appearance, and, in my opinion, are not intended to confuse purchasers of ordinary prudence. No one looking at the label or mark found upon the packages of the defendants can reasonably be deceived into thinking that it represents the goods of the complainant. The radiant, rough diamond of the defendants presents a striking dissimilarity to the conventional figure found on the complainant's packages. Not only so, but the German language and other marks connected with the radiant diamond clearly differentiate it, and the packages upon which it appears, from the complainant's package, the descriptive words of which are materially different, and in English. The mark or label, therefore, of the defendants, is not an infringement of the complainant's technical trade-mark, and is not so similar in character to that of the complainant as to tend to deceive; and there being no evidence of unfair competition in fact, but, on the contrary, a manifest disposition to conduct open and fair competition, I see no reason for sustaining the complainant's contention in this case, and the bill must be dismissed.