**EMERSON ELECTRIC MFG. CO. v. EMERSON RADIO & PHONOGRAPH CORPORATION.**

Patent Appeals No. 3779.

Court of Customs and Patent Appeals.

June 21, 1937.

For former opinion, see 89 F.(2d) 349.

Lawrence C. Kingsland, of St. Louis, Mo. (Edmund C. Rogers and Estill E. Ezell, both of St. Louis, Mo., of counsel), for appellant.

Darby & Darby, of New York City (Samuel E. Darby, Jr., and Louis D. Fletcher, both of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellee, Emerson Radio & Phonograph Corporation, a corporation of the state of New York, filed an application for the registration of a trade-mark, claimed to have been used in connection with the sale of "radio receiving sets, television receiving sets, radio-television receiving sets, and parts thereof, viz., tubes, eliminators and loud speakers," continuously since about July 1, 1927. The trade-mark consisted of a representation of a treble clef, under which were the words "Emerson Radio and Television." The words "Radio and Television," appearing upon the mark, were disclaimed "apart from the mark as shown in the drawing."

The Emerson Electric Manufacturing Company, a corporation of the state of Missouri, filed notice of opposition, alleging damage because of said opposed registration. The specific grounds of opposition stated in the notice are:

(1) That the opposer is the manufacturer of electrical equipment, including "electric motors, electric fans, including portable, wall, ceiling, floor and exhaust types, furnace blowers, forge blowers, organ blowers, and hair driers, electric generators, electric motor-generators, electric switches, including manually operated and automatically controlled types, rotary transformers, illuminating cylinders, electrically operated coffee mills, electrically operated air and water pumps, electrically operated lathes, electrically operated buffers and grinders, electrically operated dental engines, electric power units for sewing machines, electrically operated humidifiers, electrically operated air washers, and radio 'B' power units"; that it has been in business under substantially the same name "since in or about the year 1890," in which name "Emerson" was the distinctive feature.

(2) That it has continuously marketed its goods with the name "Emerson" prominently displayed thereon since "in or about 1890."

(3) That opposer is the owner of three trade-mark registrations—No. 111,931, dated August 15, 1916, No. 112,418, dated September 5, 1916, and No. 199,433, dated June 9, 1925.

The first of these registrations, all of which appear in the record, is one by the Emerson Electric Manufacturing Company, of the mark "Emerson," said to have been used continuously since 1890, in connection with the sale of "electric motors, electric fans, including fans of portable, wall, ceiling, and floor types, electric exhaust-fans, electric forge-blowers, electric generators, electric motor-generators, knife-switches, switchboards, panel-boards, fuse-boards, transformers, rotary transformers, illuminating-cylinders, watch-demagnetizers, electric organ-blowers, electric hair-driers, electrically-operated coffee-mills, electrically-operated air and water pumps, electrically-operated lathes, electrically-operated buffers and grinders, electrically-operated furnace blowers, electrically-operated hacksaws, and electric motors and power-transmitters for sewing-machines, in Class No. 21, Electrical apparatus, machines, and supplies."

The second of these registrations was by the Emerson Electric Manufacturing Company, the mark being the word "Emerson," which is claimed to have been used

continuously since 1890 in connection with the sale of "dental lathes, dental engines, and buffers and grinders for dentists' use, in Class 44, Dental, medical, and surgical appliances."

The third of said registrations covers a mark consisting of the representation of a pyramid, superimposed upon which were the words

"Fans
Emerson
Motors
Built to Last."

The words "Fans," "Motors," and "Built to Last" were disclaimed apart from the trade-mark as shown. This mark was claimed to have been continuously used by the registrant since December 6, 1924, in connection with the sale of "Nonoscillating Electric Fans, Oscillating Electric Fans, Electric Ceiling Fans, Electric Column Fans, Electric Ventilating Fans, Electric Exhaust Fans, and Electric Motors, in Class 21, Electrical apparatus, machines, and supplies."

The applicant filed an answer to the opposition in which, among other matters, it is denied that the opposer manufactures radio receiving sets, television receiving sets, radio-television receiving sets and parts thereof, viz., tubes, eliminators, and loud speakers; that the " 'Radio B Power Units' referred to in the said paragraph 1 of the opposition were not manufactured or sold by opposer until long after applicant had manufactured and sold its goods aforesaid bearing applicant's mark." Further, it avers that the "opposer did not at any time, prior to applicant, sell or offer for sale any radios, radio parts or radio products of any kind and never used the name 'Emerson' thereon; and never used said name upon goods such as those manufactured or sold by applicant."

The issuance of the three trade-marks pleaded in the opposition is admitted, but opposer's title thereto is not admitted. The answer denies that the goods, "radio receiving sets, television sets, radio-television receiving sets, and parts thereof comprising tubes, eliminators and loud speakers," are of the same descriptive properties as the goods upon which the opposer has used its trade-name of "Emerson." Confusion and damages are denied. Denial is also made that opposer is entitled to a monopoly of the use of the word "Emerson" on complete radio receiving sets in combination with phonographs, and the like.

Further answering, applicant insists that it and its predecessors, through whom it derived title, were the first to use the word "Emerson" on any of the apparatus named in its application, and that the opposer knew and assented to such use, and is estopped thereby.

The answer also pleads five registrations which it claims to own, as follows: "No. 108,287—Jan. 25, 1916, No. 130,063— Apr. 6, 1920, No. 155,412—May 30, 1922, No. 225,976—Mar. 29, 1927, No. 131,902— May 25, 1920."

The first of these, No. 108,287, registered January 25, 1916, is a registration of a mark consisting of the words "Victor H. Emerson," in script, claimed to be used continuously since July 1, 1915, in connection with the sale of phonographic machines and sound records. This registration was by Emerson Phonograph Company, Inc., No. 131,902, registered May 25, 1920, is the registration of a mark consisting of a representation of a treble clef, in connection with the sale of phonograph records, alleged to be continuously used since July, 1918, and made by Emerson Phonograph Company, Inc., No. 130,063, registered April 6, 1920, is a registration of a mark consisting of a representation of a shield, in black and white, with the word "Emerson" written across the top, alleged to be used in connection with the sale of phonograph records continuously since May, 1918, and made by Emerson Phonograph Company, Inc., No. 155,412, registered May 30, 1922, is a registration of a trade-mark consisting of a representation of a treble clef, superimposed upon a phonograph record and the words "Emerson Records," alleged to be used in connection with the sale of phonographs and phonograph records continuously since June 3, 1918, made by Emerson Phonograph Company, Inc., No. 225,977, registered March 29, 1927, is the registration of a trade-mark, consisting of the representation of a treble clef, with the words "Emerson Phono-radio," and a scroll underneath the same, alleged to be used in connection with the sale of complete radio receiving sets adapted to combination with phonographs since March 14, 1924, which registration was made by Wasmuth-Goodrich Company.

Both parties took testimony.

The Examiner of Interferences was of opinion that two questions were involved; first, the likelihood of confusion, and, secondly, whether the mark sought to be registered is the name of a corporation. As to the name clause, the Examiner of Interferences was of opinion that the parties were engaged in the sale of products of the "same general character," and that the use "of the notation 'The Emerson Electric Manufacturing Company' as a name, enables the opposer to qualify under the name clause of Section 5." The Examiner also found that the opposer was the prior user of the mark. Having come to the conclusion that the goods of the respective parties, while the question was "within the twilight zone," were of the same descriptive properties, the Examiner of Interferences sustained the opposition and refused registration.

■■■ On appeal, the Commissioner called attention to the fact that the name clause was not set up in the notice of opposition. This is true, and hence, as said by the Commissioner, must be considered as waived by the opposer. This doctrine was announced in Rookwood Pottery Co. v. A. Wilhelm Company, 43 App.D.C. 1. The appellant argues at length that it has set up this ground of opposition in its notice, and quotes considerable portions of said notice in an attempt to substantiate this theory. These portions contain general allegations about the use of the name "Emerson" in connection with the sale of its goods, but, in our opinion, these cannot be treated as a proper pleading of the corporate name clause sufficient to advise the office that appellant was relying thereon. The word "Emerson" was not and is not, the complete corporate name of the appellant. The Supreme Court, in American Steel Foundries v. Robertson, Commissioner et al., 269 U.S. 372, 46 S.Ct. 160, 162, 70 L.Ed. 317, discussing the corporate name clause, said, in part:

"The provision, therefore, that no mark consisting merely in the name of a corporation shall be registered, is to be construed in harmony with those established principles in respect of the appropriation of corporate names to which we have referred. Where the appropriation of the corporate name is complete, the rule of the statute, by its own terms, is absolute, and the proposed mark must be denied registration, without more; but, where less than the whole name has been appropriated, the right of registration will turn upon whether it appears that such partial appropriation is of such character and extent that, under the facts of the particular case, it is calculated to deceive or confuse the public to the injury of the corporation to which the name belongs.

"The fact, for example, that the articles upon which the mark is used are not of the same description as those put out by the corporation, is entitled to weight, since the probability of such confusion and injury in that situation obviously is more remote than where the articles are of like kind. The cases, naturally, present varying degrees of difficulty for the application of the rule. Primarily the power and the duty rests with the Commissioner of Patents to determine the question in each case, in the exercise of an instructed judgment upon a consideration of all the pertinent facts."

In the case cited, the word in question was "Simplex," which was not the complete name of any particular corporation, but a part of many, and registration of a trade-mark containing the word was allowed.

The Patent Office, for a considerable period, has required the specific pleading of the corporate name clause. In re Zinsmaster Baking Company, 17 T.M.Rep. 554; George W. Luft Co., Inc., v. Integrity Hosiery Co., 14 U.S.P.Q. 292.

■■■ The appellant insists that the Commissioner may reject registrations on matters ex parte, and not pleaded in an opposition proceeding, and cites cases such as Quaker State Oil Refining Co. v. Wolverine-Empire Refining Co., 81 F.(2d) 245, 23 C.C.P.A. (Patents) 827.

Under the pleadings in this case, we do not think the opposer is in position to raise that question here.

The Commissioner considered that, following our recent case of All-American Mohawk Corporation v. Rollinson, 77 F.(2d) 926, 22 C.C.P.A. (Patents) 1301, the goods were not of the same descriptive properties, that there was no proof of confusion, and that the opposition should be overruled and registration be permitted.

From this decision the opposer has appealed. On April 5, 1937, we entered judgment affirming the judgment of the Commissioner. 89 F.(2d) 349, 24 C.C.P.A. (Patents) ——. A petition for rehearing was duly filed, and, on May 29, 1937, the pe-

tition was granted, without reargument. The matter has again been carefully considered by the court.

It appears from the record that the general business of the appellant, the Emerson Electric Manufacturing Company, is the manufacture and sale of electric motors, electric fans, and other apparatus and appliances of similar nature, the sale of which is nation wide and international. The products have been extensively advertised. It appears from the testimony of the witness Finch that the name "Emerson" has been used in connection with equipment, particularly on dental, medical, and surgical appliances, since 1900. It is also shown that use has been made of the various registered trade-marks hereinbefore mentioned, by the appellant, at various times covering the period from the first of said registrations. The goods with which said marks were used were goods as specified in the various registrations, and consisted of a general line of electric apparatus and fixtures, particularly motors, motor-generators, and fans. The company has never manufactured or sold phonographs or radio apparatus, except in two instances, where it is claimed radio apparatus was produced and sold under its marks, namely, in 1931 and following, when it produced a special dynamotor for radio apparatus, and motor-generator sets for use with radio equipment which were produced in 1921 and subsequently. One of these motor-generators is shown in Exhibit 9. The illustration shows the device to be a motor and generator, connected by a jointed coupling and which devices were offered for sale with an output of from 500 to 1500 volts D. C., or 100 to 400 watts, for use on 60 cycles or direct current. The overall dimensions of channel mountings ranged from 17¼ x 5 inches to 22½ x 5 inches, and the sets were advertised to be "Motor-Generator Sets for Radio Transmission," with this comment:

"The rapid development of the wireless telephone and telegraph has resulted in a demand for high-grade quiet-running generating equipment for operation on commercial circuits to furnish the higher voltages required for the operation of transmitting tubes."

The special dynamotor is shown by Exhibit 10. This is described as "Emerson 'B' Power Unit, 32-Volt Direct Current for Operating Radios from 32-Volt Farm Lighting Plants Replaces 'B' Batteries—Maintains the Original Volume, Tone and Reception Qualities of the Radio."

Electric motors for use with phonographs have been supplied since 1911, but the name "Emerson" was not used thereon until 1921. The machines with which these motors were installed were of the automatic, coin-operated, entertainer type of large size, such as are installed in restaurants, and so forth.

During the years since the appellant and appellee have been doing business concurrently, the only confusion which has occurred, so far as the record discloses, has been the missending of some fifteen or twenty letters through the mails.

On the part of the appellee, the record shows that the appellee, and its predecessors in title, have been, since 1916, engaged in the manufacture and sale of phonographs and records therefor, under the mark of "Emerson," in one form or another, as shown by the registrations hereinbefore stated. Recently, the sale of phonographs and records has been discontinued. Appellee's claim of title is not in dispute.

In 1923, the appellee and its predecessors in title entered the radio-receiving set field and have, since that time, continuously sold radio receiving sets. These were first sold under said trade-mark No. 225,976, registered March 29, 1927, in the name of Wasmuth-Goodrich Company, and later that part of the business, together with the trade-mark, was duly transferred to appellee. The appellee was incorporated on October 15, 1924, under its present name, and since that time has dealt in radio receiving sets and phonograph sets and records, at all times using a trade-mark in which the word "Emerson" was associated, until about July 1, 1927, when the pending mark was adopted, and since when it has been continuously used.

The first question presented for consideration is as to the descriptive properties of the respective goods of the parties. The goods which were being manufactured and sold by appellant when appellee entered the phonograph, and, later, the radio receiving set field, consisted of electric machinery and devices generally, particularly motors and fans. It had established its standing and good will upon these goods. The only thing it had built

or sold prior to appellee's entrance into the field which might be considered to be of the same descriptive properties as phonographs or radio receiving sets, was its motor-generators of 1921. However, these devices, if used for radio purposes, were used for radio transmission and not for receiving, and had no function for the latter purpose. They could not, therefore, be said to be "radio receiving sets * * * and. parts thereof." As to the goods sold and manufactured by appellant at that time, we are of opinion that they were not goods of the same descriptive properties as those included in the present application. The goods were used for different general purposes. Motors are used mostly for commercial and public utility purposes. Fans are for ventilation. The number of devices named in the first registrations of appellant are of a different character and used for different purposes than a radio receiving set which is used for amusement and entertainment. They are sold at different places, the latter usually at music or radio retail stores, the former usually at wholesale, to jobbers or to contractors.

The case of Williams Oil-O-Matic Heating Corporation v. Westinghouse Electric & Manufacturing Company, 62 F.(2d) 378, 20 C.C.P.A. (Patents) 775, is in point. This was an opposition case. The applicant was attempting to register the mark "Adjust-O-Matic" for use on adjustable and thermostatically controlled electric sadirons—flatirons. The opposer set up use of the trade-marks "Oil-O-Matic" and "Dist-O-Matic," on electrically operated and thermostatically controlled liquid fuel burning devices. As to whether the goods were of the same descriptive properties, we said:

"The goods of the parties are household utilities. They are adapted to be connected to the electric-light circuit, and are thermostatically controlled. They are not similar, however, in any other respect. They differ greatly in cost, use, appearance, and structure, and, of course, are not competitive.

"Were it not for the fact that they are thermostatically controlled, we dare say that no one would contend that sadirons possess the same descriptive properties as either fuel-burning devices or refrigerators.

"In this connection, it may be observed that electric toasters, heating pads, waffle irons, table grills or sandwich toasters, and possibly other articles of household utility are electrically operated and thermostatically controlled. Is it possible that those articles and either fuel-burning devices or refrigerators possess the same descriptive properties merely because they are electrically operated and thermostatically controlled? Might it not with equal force be argued that all electrically operated devices belong to the same class for trade-mark purposes?

"We are of opinion that the mere attachment of automatic temperature regulators does not so change the character of sadirons as to give them, within the principles heretofore referred to, the same descriptive properties as either electrically operated and thermostatically controlled refrigerators or fuel-burning devices, and that the commissioner of Patents reached the right conclusion."

The case last reviewed was cited with approval in Meredith Publishing Company v. O. M. Scott & Sons Company, 88 F.(2d) 324, 24 C.C.P.A. (Patents) ——.

■ As we have seen, the special dynamotor is for use with radio equipment, also called "radio 'B' power unit," and was first produced by appellant in 1931. The Commissioner states in his decision that it is "fairly apparent" that "it had been permanently discontinued before the application was filed." A more careful search of the record fails to disclose this fact, and, while this fact may have been made apparent to the Commissioner in oral argument, or otherwise dehors the record, we must consider the matter on the record. It is doubtless true that this apparatus, performing the same function as a set of "B" batteries in a receiving set, is of the same descriptive properties as "radio receiving sets * * * and parts thereof."

■ We are unable to see, however, in what way this becomes important in this case. The appellee entered the radio receiving sets field in 1923 and 1924, using the name "Emerson," as an essential part of its trade-mark, eight years before the appellant produced its radio "B" power unit, and has continuously occupied it since that time, extensively advertising its product and its trade-mark. Having entered this field first, there appears to be no

reason why it should not be allowed to register the trade-mark which it has been using, according to its application, continuously since about July 1, 1927.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

HATFIELD, J., did not participate in this case.