**WALGREEN DRUG STORES, Inc., v. OBEAR–NESTER GLASS CO.**

**CORNING GLASS WORKS v. SAME.**
Nos. 11654, 11655.

Circuit Court of Appeals, Eighth Circuit.
July 19, 1940.

As Modified on Denial of Rehearing
Aug. 29, 1940.

Wayne Ely, of St. Louis, Mo., and E. S. Rogers, of Chicago, Ill. (V. M. Dorsey, of Washington, D. C., and John H. Bruninga and John H. Sutherland, both of St. Louis, Mo., on the brief), for appellants.

Lawrence C. Kingsland, of St. Louis, Mo. (Estill E. Ezell and Edmund C. Rogers, both of St. Louis, Mo., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and COLLET, District Judge.

GARDNER, Circuit Judge.

The appellee, Obear-Nester Glass Company, brought suit against appellant Walgreen Drug Stores, Inc., charging the infringement of its trade-mark No. 231,759, registered August 23, 1937. Appellant Corning Glass Works was permitted to intervene, and it took over the defense of the suit. The real controversy is between Obear-Nester Glass Company and Corning Glass Works. For convenience we shall refer to the Obear-Nester Glass Company as plaintiff and the Corning Glass Works as defendant.

Plaintiff alleged in its complaint that it had sold glassware, and particularly glass bottles, since a time prior to January 2, 1896, at which time it adopted the trade-mark "Rex," and molded it into or affixed it to glass bottles; that it registered its trade-mark "Rex" October 23, 1900; that it re-registered it August 23, 1927, and that it continued to use the trade-mark on its goods, and that a good will developed

thereunder of great value, and that it does a large volume of business; that defendant Corning Glass Works has transported and sold in interstate commerce glassware, including bottles, bearing the trade-mark "Pyrex," which trade-mark is alleged to constitute an infringement of plaintiff's trade-mark.

The Corning Glass Works, in its answer, denied infringement, alleging that it had adopted "Pyrex" as its trade-mark in 1915 and continuously thereafter used it to identify glassware made by it with special properties adapting such glassware for chemical, industrial and optical uses and purposes and where thermal endurance is of value; that it has used this trade-mark since 1922 on its nursing bottles made of heat-resisting glass; that it has extensively advertised its products bearing the trade-mark "Pyrex"; that its trade-mark is of great value as indicating the source or origin of the glass bearing this mark; that its wares bearing this mark are well known throughout the United States, and that Obear-Nester has acquiesced in its right to apply "Pyrex" to its glassware and that it is estopped by reasons of its knowledge and acquiescence in its use of this trade-mark on its products to now claim that defendant is not entitled so to do.

The lower court made findings which in general sustained the allegations of plaintiff's bill of complaint. It found that plaintiff's trade-mark "Rex" was widely advertised and had become well known in the trade as identifying plaintiff's products long prior to the year 1915; that a substantial business was engaged in by plaintiff in glassware from 1917 to the date of the filing of the bill of complaint; that in 1915 Corning Glass Works adopted and began to use the word "Pyrex" for a line of glassware; to-wit, baking ware, and thereafter applied the mark "Pyrex" to laboratory ware; that still later, after making nursing bottles for a number of years, it applied the mark "Pyrex" to those bottles. The court made no definite finding as to whether Corning Glass Works did or did not have knowledge of the use of the trade-mark "Rex" at the time it adopted "Pyrex" as its trade-mark, but found that the Corning Glass Works denied such knowledge and had failed to establish that it used due care and caution to ascertain whether or not there had been a prior use of a confusingly similar mark, and that it admitted that it would have adopted "Pyrex" regardless of whether it had had knowledge of a prior use of the trade-mark "Rex." The court further found that on March 13, 1917, the Corning Glass Works registered "Pyrex" as its trade-mark for glass, and on October 14, 1924, registered it for nursing bottles; that in 1928, plaintiff first learned of the existing direct conflict between its and Corning's products, arising out of the use of both "Pyrex" and "Rex" on nursing bottles, and that plaintiff had notified Corning of the alleged infringement in 1930. The court also found that there was a manifest likelihood of confusion in the minds of purchasers between goods sold under the plaintiff's trade-mark "Rex" and the goods sold by Corning under the trade-mark "Pyrex," and that actual confusion had resulted; that plaintiff had not acquiesced in the use of "Pyrex" by defendant, and that defendant had sold in interstate commerce glassware bearing the mark "Pyrex," in infringement of plaintiff's trade-mark "Rex."

From these facts, the court found infringement and entered decree reciting, among other things, that plaintiff was the owner of the trade-mark "Rex" applied to glassware, and particularly to bottles and the like, and that defendant had infringed upon plaintiff's rights by the use of "Pyrex" upon goods of the same descriptive properties as those upon which plaintiff had used and was using its trade-mark "Rex." The court perpetually enjoined defendant from the use of the trade-mark "Pyrex" upon glassware, "and from counterfeiting, copying or colorably imitating the trade-mark 'Rex,' and affixing it to merchandise of the same descriptive properties as those upon which the trade-mark 'Rex' is employed by plaintiff." The decree also provides that the defendant shall account for profits "derived through the infringing use of the trade-mark 'Pyrex,'" and for damages because of the infringing use of the infringing trade-mark "Pyrex."

The following facts are established either by admissions or by undisputed testimony, and although not embodied in the court's findings, we think them material to the issues in this suit.

The plaintiff has never manufactured any glassware, other than bottles. For many years subsequent to January 2, 1896, it applied the trade-mark "Rex" only to prescription bottles sold to druggists for that specific use. For a short time prior to

1919, the mark "Rex" was applied to liquor bottles, but this use was discontinued in 1919 and has never been resumed. At the time plaintiff procured its certificate of registration for the trade-mark "Rex," October 23, 1900, it stated that, "The class of merchandise to which this trade-mark is appropriated is bottles, and the particular description of goods comprised in said class upon which the trade-mark is used is prescription bottles. It is also usually displayed on the boxes or packages wherein the bottles are packed for shipment by stamping, printing, or affixing it on the box or package." When it applied to re-register the trade-mark on April 25, 1927, it stated in its application as follows: "Be it known that Obear-Nester Glass Co., a corporation * * *, has adopted and used the trade-mark shown in the accompanying drawing, for prescription bottles made of glass, Class 33, Glassware." From the date of the first registration of its trade-mark until 1928, with the exception of the application to liquor bottles, plaintiff has never at any time applied the mark "Rex" to anything other than prescription bottles.

The Corning Glass Works had, prior to 1915, perfected a manufacturing process by which it produced a special quality of glass which resists temperature changes and other shocks. The name "Pyrex" was applied to that glassware in 1915. The word has its origin in the Greek word "pyr", meaning fire, and the Latin word "rex," meaning king. Corning had theretofore applied the terms "Nonex" and "CRX" to glass of this character as indicative of its non-expansion qualities. Upon the adoption of the trade-mark "Pyrex," Corning applied it to many articles of glassware it was manufacturing, including all kinds of cooking utensils. It began the manufacture of laboratory equipment made of its heat-resisting glass and applied to that equipment the mark "Pyrex." Later, it manufactured electrical glass, such as insulators, industrial ware, such as pulleys for machinery, vacuum bottles, and many other articles of general as well as technical use. It manufactured a two-hundred inch telescope mirror disc for the California Observatory from its Pyrex glass and applied the name to the product. It manufactured the Mount Palomar two hundred-inch telescope mirror from its glass and applied the mark "Pyrex" to that product. It has spent millions of dollars advertising products of its manufacture

from Pyrex glass as having peculiar heat-resisting qualities and characteristics not possessed by ordinary glass. The name "Pyrex," subsequent to 1915 and prior to 1922, became known throughout the country almost as a household word indicative of the products made of a particular kind of heat-resisting glass. The name "Pyrex" has been so thoroughly established as describing a heat-resisting glass that the late edition of the Merriam-Webster International Dictionary, Unabridged, contains the following definition:

"Py′ rex (pi′ reks) (Gr. Pyr. fire—L. rex king). A trade-mark applied to a variety of glasses and glassware usually resistant to heat, chemicals or electricity; hence (sometimes not cap.), glass or glassware bearing this trade-mark,—py′ rex, adj."

Corning has never at any time manufactured or sold prescription bottles, but in 1922, it began the manufacture of a nursing bottle made for the purpose of permitting the heating of infants' food in the bottle without injury to the container. It applied the mark "Pyrex" to that product. In 1924, it obtained a certificate of registration of the trade-mark "Pyrex" applied to nursing bottles. It manufactured and sold many thousands of these bottles between the years 1922 and 1928, the bottles all being labeled "Pyrex Nursing Bottle," and sold as such.

It was not until 1928 that plaintiff applied its trade-mark "Rex" to nursing bottles. These Rex nursing bottles are not similar to the Pyrex nursing bottles either in material, appearance or price. They are cheap bottles, made of ordinary glass, costing about five cents each, whereas the Pyrex nursing bottles are sold at twenty-five cents.

In 1930, plaintiff extended the use of its trade-mark to a bottle known as a "utility bottle." In 1929, it applied the trade-mark "Rex" to toilet bottles of an indiscriminate character, and in 1931, it applied its trade-mark to a bottle known as the "Pockiteer Flask," used as a container for liquor. All of these products manufactured by plaintiff were made from ordinary glass.

The only actual conflict claimed between plaintiff's products and those of the defendant is in the sale of the Pyrex nursing bottles.

Reversal of the decree entered is sought on substantially the following grounds: (1) there is no statutory infringement of

the "Rex" trade-mark for prescription bottles by the application of the "Pyrex" trade-mark to Corning glassware and utensils; (2) there is no deceptive similarity between "Rex" and "Pyrex"; (3) the doctrine of expansion of trade affords no ground for extending the scope of the "Rex" registration from prescription bottles to nursers; (4) "Rex" is not a mark which is capable of extension; (5) Obear-Nester is estopped by laches from prosecuting this action; (6) the decree is erroneous in enjoining the use of "Pyrex" in territories in which Corning was selling "Pyrex" for years, and in which there had been no commercial use of "Rex."

The trade-mark statute relied upon by plaintiff is Title 15, Sec. 96, U.S.C.A. (See, also: Sec. 16, Trade-Mark Act Feb. 20, 1905), which, among other things, provides that, "Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, packages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration * * * shall be liable to an action for damages," etc.

▬ Plaintiff bottoms its claim for injunction upon the alleged infringement of a statutory trade-mark. There is no claim of unfair competition, unfair practices, nor fraud. There is no allegation as to any specific damages, and the court's jurisdiction was dependent entirely upon the fact that the suit was based upon a Federal statute. Mere registration under the Federal Act does not create a trade-mark and confers no new rights to the mark claimed, nor, indeed, any greater rights than already existed at common law without registration. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650; In re Plymouth Motor Corp., Cust. & Pat.App., 46 F.2d 211; Prestonettes, Inc., v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731. Registration is a method of recording for the protection of dealers, the public, and owners of trade-marks. It is notice of the claims of the owner affecting his right to the mark. But the right to such a trade-mark must have accrued from actual use, because such right is not created by registration

of the mark. A trade-mark is inseparable from the good will of the business of its possessor and it exists only as an incident to the business in which it was lawfully acquired and with which it remains identified. Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L. Ed. 713.

▬ It appears from the sworn declaration of plaintiff in its application for registration that it claimed to have acquired a common law right to the exclusive use of the trade-mark "Rex" upon prescription bottles. It so limited its claim at the time of its original registration and again when it filed its application, April 25, 1927, for a re-registration of its mark. This was in the nature of a notice to the owners of trade-marks, to dealers, and to the whole world, that Obear-Nester was claiming the right to the exclusive use of this trademark on prescription bottles only. If it had in fact employed this trade-mark upon other products, these declarations, which in the present controversy are admissions against interest, may well have been accepted as disclaimers and an abandonment of any common law right to apply the trade-mark to any other product. The registered trade-mark is limited by its claim, and the applicant is concluded by his statement made a part of his application. The exclusive right to use the mark should be limited to use on the class of goods for which it was registered, as set forth in the statement filed, and to merchandise of substantially the same descriptive properties. Richter v. Anchor Remedy Co., C.C.Pa.,W.D., 52 F. 455; Richter v. Reynolds et al., 3 Cir., 59 F. 577; Pittsburgh Crushed-Steel Co. v. Diamond Steel Co., C.C.Mo.,E.D., 85 F. 637.

What is said by the Supreme Court in Sontag Chain Stores Co. v. National Nut Co. of California, 60 S.Ct. 961, 967, 84 L. Ed. 1204, is in principle applicable here. The court reversed the decision of the Circuit Court of Appeals, which had sustained a re-issue patent and held it infringed by the accused device, and rejected the defense of intervening rights. In the course of the opinion it is said:

"In the case under consideration the patentee might have included in the application for the original patent, claims broad enough to embrace petitioner's accused ma-

chine, but did not. This 'gave the public to understand' that whatever was not claimed 'did not come within his patent and might rightfully be made by anyone.' The enlarged claims were presented with knowledge of the accused machine and definite purpose to include it.

"Recapture within two years of what a patentee dedicates to the public through omission is permissible under specified conditions, but not, we think, 'at the expense of innocent parties.' Otherwise, the door is open for gross injustice to alert inventors and baffling uncertainty will hinder orderly development of useful arts."

■ The law of trade-marks is a branch of the law of unfair competition (F. W. Fitch Co. v. Camille, Inc., 8 Cir., 106 F.2d 635; Esso, Inc., v. Standard Oil Co., supra; United Drug Co. v. Theodore Rectanus Co., supra), and a trade-mark is infringed if such trade-mark, or a colorable imitation of it, is without authority placed upon substituted goods of the same class as those for which the mark has been appropriated. It would be a fraud for a producer or trader to use the trade-mark of another, and thus pass off his goods as the goods of the proprietor of the trademark. The vice consists in the sale of goods of one manufacturer or dealer as those of another by means of the use of such trade-mark. Esso, Inc., v. Standard Oil Co., supra; F. W. Fitch Co. v. Camille, Inc., supra. To warrant relief in equity, it must appear that false representation is directly or impliedly made.

In the instant case, plaintiff's trade-mark, if limited to prescription bottles, has not been infringed by the defendant. But it is claimed that the goods of plaintiff and the goods of Corning have the same descriptive properties, and hence, the registration of plaintiff's trade-mark gave it a monopoly in the broad field of glassware, whether it has in fact entered into or extended its trademark beyond prescription bottles. Section 16 of the Trade-Mark Act of 1905 prohibits the affixing of a trade-mark without the consent of its owner "to merchandise of substantially the same descriptive properties as those set forth in the registration." Attached to plaintiff's statement and declaration filed with its application for registration of its trade-mark, October 23, 1900, is a drawing as a "facsimile presented for record," which was said to "truly represent the trade-mark sought to be registered."

This is in the record as part of plaintiff's Exhibit 1 and is here reproduced.

■ As has been said before, Corning has never manufactured prescription bottles, nor any glassware resembling such bottles. Its products constitute a distinct class because of their heat-resisting qualities. In fact, the name "Pyrex" has come to mean, and standard authorities have recognized it as meaning, glassware of a variety "resistant to heat, chemicals or electricity." Can the court by judicial fiat take from this word the meaning which it has acquired and which has been so universally accepted that lexicographers have recognized its established meaning? To suppress it and blot it out of our language and remove it from our dictionaries, transcends the power of a court of equity, and if attempted would result in "confusion worse confounded." This word, when affixed to glassware, means that such glassware has the quality of resistance to sudden changes brought about by exposure to heat, chemicals or electricity. We are not holding that the word has ceased to exist or lost its validity as Corning's trade-mark. Plaintiff's prescription bottle confessedly has no such qualities, nor does plaintiff manufacture any goods having such descriptive qualities. In other words, the goods of Corning occupy an entirely distinctive field. Many physical exhibits were displayed to the lower court and produced before us at the time of argument. De-

962

fendant's Exhibit No. 81 is a photograph of certain of these exhibits, illustrating generally their character. There are in the record six other similar photographs showing other physical exhibits, but we are attaching Exhibit 81 by way of illustrating the marked difference between the products upon which plaintiff's trade-mark has been affixed and the products upon which defendant's trade-mark "Pyrex" has been affixed.

It would be difficult to believe that any confusion would probably or could possibly result from the use of defendant's trade-mark on its distinctive wares, or that anyone of ordinary intelligence could be deceived by the use of its trade-mark, or that any such person might be led to purchase defendant's goods on the belief that he was purchasing those of plaintiff.

The mere fact that one person has adopted and used a trade-mark on his goods,

does not, of course, prevent the adoption and use of the same or a similar trade-mark by others on articles of a different description. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317.

■ It can not be said that "Pyrex" is a colorable imitation of "Rex." There is no claim that defendant's trade-mark was not adopted in good faith. In fact, it has neither the appearance nor the sound of "Rex." But regardless of this fact, defendant's trade-mark is not affixed to products of substantially the same descriptive properties. Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., Cust. & Pat.App., 90 F.2d 331. A prescription bottle is not an article offered to the general public, but a container used by a druggist or possibly a physician to hold medicine. It is a one-use article, sold by a wholesale druggist or jobber to the retailer. In other words, it is not sold ultimately as a bottle, but as a container of medicine or drugs. The purchaser is not interested in the character of bottle, but only in its contents. The trade-mark on such an article not sold as a separate commodity is not a competitor of, nor does it have anything in common with the trade-mark on Pyrex utensils bought as separate commodities for repeated use.

■ The only substantial claim of conflict or confusion arises with reference to a nursing bottle manufactured by Corning from its heat-resisting glass and a nursing bottle manufactured by plaintiff out of ordinary glass, and as to this it should first be observed that plaintiff did not extend its business into this field until 1928, when it first placed its trade-mark "Rex" upon nursing bottles. Corning, in 1922, put out its Pyrex nursing bottles. These bottles were made of Pyrex glass so that they might be heated without injury, and they were branded the same as the baking ware and scientific apparatus manufactured by Corning. Corning had occupied this field six years prior to the time that Obear-Nester placed its "Rex" trade-mark upon nursing bottles, and during this time defendant expended large sums of money in advertising its Pyrex nursing bottle. The Rex nursing bottles are not similar to the Pyrex bottles, either in material, appearance or price. They are cheap bottles made of ordinary glass, costing

about five cents each, whereas the Pyrex nursing bottles are sold at twenty-five cents each. The evidence of confusion or deception with reference to these nursing bottles, in view of the dissimilarity of appearance, dissimilarity of material and difference in price is not substantial. An infringement depends upon whether the resemblance is sufficiently close to deceive purchasers and thus pass off the goods of the producer as being that of another. In considering the deceptive tendencies of defendant's trade-mark, we should take into consideration all the surrounding circumstances. No person of ordinary intelligence can well be confused with reference to these articles. Kann v. Diamond Steel Co., 8 Cir., 89 F. 706; Allen B. Wrisley Co. v. Iowa Soap Co., 8 Cir., 122 F. 796; P. Lorillard Co. v. Peper, 8 Cir., 86 F. 956. But in any event, plaintiff entered the field after defendant had already occupied it and had spent large sums of money in advertising this Pyrex nursing bottle, thereby acquiring a prior right to the use of the trade-mark on this product.

It should be observed before passing from this subject that all of plaintiff's products bear its registered trade-mark consisting of the letters in combination "O-N." This trade-mark appeared apparently on its advertisements as early as 1908. Whatever other trade-marks may be affixed to plaintiff's ware, it seems that there is also affixed the trade-mark "O-N."

■ It is urged by plaintiff that under the doctrine of expansion of business, it is entitled to an unhampered use of its trade-mark "Rex" on products normally considered as of its manufacture. As has already been pointed out, plaintiff's suit is based upon an alleged infringement of a registered trade-mark. The bill contains no averments of unfair competition, nor, indeed, is it alleged that purchasers are deceived into buying the products of defendant in the belief that they come from plaintiff. It is doubtful whether the doctrine of expansion of trade is applicable in a case of alleged infringement of a technical registered trade-mark. Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962. The argument of plaintiff amounts to a claim that the registration of its trade-mark "Rex" for prescription bottles preserved to it for all time a monopoly not only on prescription bottles made of ordi-

964

nary glass but on all other bottles of whatever description or quality, and, in fact, upon all glassware. The contention can not be sustained.

A somewhat similar contention was urged in Emerson Electric Manufacturing Company v. Emerson Radio & Phonograph Corporation, 2 Cir., 105 F.2d 908. In that case, the Emerson Electric Manufacturing Company brought suit for infringement of its trade-mark and for unfair competition against the Emerson Radio & Phonograph Corporation. In the course of the opinion, the court holding that when one acts innocently and is not chargeable with notice, he may demand that the court weigh his interest as it has developed at the time the suit is brought, said:

"There is a great difference between such a case and one in which the second merchant invades a market which the first is already exploiting. Whether even then he is to be charged with notice of the first's prior user we lay aside; but certainly the defendants at bar should not be charged with notice that the plaintiff would begin to sell radios, or that the public would assume that radios sold by them came from the plaintiff. If the plaintiff proposed to keep the radio market as an unused preserve, it was bound to protect it against invaders by affirmative action; it could not impose upon them the duty of divining its own purposes or possible mistakes of the public."

So here, the defendant could not certainly, in face of the declared purpose of plaintiff to limit its trade-mark "Rex" to prescription bottles, and its conduct in limiting its products to such bottles, have anticipated that it would begin to manufacture and sell nursing bottles.

Having reached the conclusion that the decree must be reversed upon the grounds already considered, we pretermit consideration of the contention that plaintiff should in any event be estopped from charging defendant with infringement by the use of its trade-mark on its distinctive and varied products.

The decree appealed from is reversed and the cause remanded with directions to enter decree dismissing plaintiff's bill of complaint on its merits.