GRIESEDIECK WESTERN BREWERY CO. v. PEOPLES BREWING CO.

No. 12979.

Circuit Court of Appeals, Eighth Circuit.

June 20, 1945.

A. W. Murray, of Chicago, Ill. (Hunt, Palmer & Hood, of Duluth, Minn., on the brief), for appellant.

T. J. Doyle, of Duluth, Minn., for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

Griesedieck Western Brewery Company, plaintiff in the trial court, appeals from a judgment dismissing its suit by which it sought to enjoin Peoples Brewing Company from infringing its registered trade-mark and copyrighted labels. The parties will be referred to as they were designated in the trial court.

In its complaint plaintiff alleged that it was and for many years had been extensively engaged in the manufacture, advertising, distribution and sale in interstate commerce of beer under its "Stag" trade-mark; that due to skilful workmanship and the high quality of its beer in bottles bearing its trade-mark, and by reason of the advertising and sale of its beer for more than thirty years in interstate commerce, its trade-mark "Stag" and stag's head design had become generally and favorably known and familiar to the trade and public as identifying its product, and that "said trade-mark 'Stag' and said distinctive appearance of plaintiff's label have become a substantial part of the valuable good will of the plaintiff." It alleged that it was the sole owner of certificate of trade-mark registration issued by the Commissioner of Patents for the trade-mark "Stag" and stag's head, and that notice to the public of such registration had always appeared upon the labels of its goods since the date of such registration; that plaintiff was also the owner of certificates of label registrations for labels created, designed and used by it on its beer and that such labels were copyrighted, and that notice of copyright had always appeared on its labels.

It alleged that the defendant was a corporation organized under the laws of the State of Minnesota, with its usual place of business in the City of Duluth, Minnesota, from which place of business it had committed the acts of infringement and unfair competition complained of; that it had been and was still infringing plaintiff's trade-mark and registered labels, and was competing unfairly with plaintiff by using in the City of Duluth and State of Minnesota and elsewhere in the United States, in interstate commerce, the trade-mark "Stag" and stag's head design in connection with the labeling, advertising, selling and distributing of beer; that the trade-mark "Stag" and stag's head design as used by defendant was a simulation of the distinctive style of plaintiff's trade-mark and labels; that defendant adopted and used such trade-mark for beer with knowledge of plaintiff's prior extensive use of the trade-mark and label; that the term "Stag" and stag's head design as used by defendant was substantially identical with and a colorable imitation of plaintiff's registered trade-mark and so nearly resembles that of plaintiff as to be likely to cause con-

fusion or mistake in the minds of the public or to deceive purchasers; that the wrongful imitation, simulation and infringement by defendant of plaintiff's trade-mark, design and labels were intended to enable and did enable unscrupulous dealers to substitute and pass off defendant's infringing product as and for plaintiff's product; that defendant's beer bearing said infringing trade-mark, labels and designs was sold in the same kind of retail stores, shops, taverns and places where beer is sold and dispensed, as plaintiff's product is sold, to the same class of consumers; that by its unlawful imitation and simulation of plaintiff's trade-mark and registered label, defendant was competing unfairly with plaintiff in interstate commerce and was endeavoring to and had unlawfully appropriated the good will theretofore established by and belonging to plaintiff in its trade-mark and distinctive style of label.

Appropriate allegations as a basis for equitable relief by injunction were embodied in the complaint, and plaintiff asked that defendant be enjoined from the alleged infringements.

Defendant by its answer admitted its corporate existence and admitted that plaintiff was engaged in the manufacture, sale and distribution of beer under the trade-name of "Stag"; denied that the plaintiff was the sole or exclusive owner of the trade-mark or the stag's head design, and denied that plaintiff was the sole owner of the right to use the said design or label for beer. It denied that it was or ever had infringed any right of the plaintiff to the trade-mark or trade-name "Stag" or stag's head design; denied that it now or ever has or ever will compete unfairly with plaintiff anywhere. It also denied that the name "Stag" or stag's head design as used by it was a simulation of any distinctive style of label used by plaintiff, and it denied that it adopted the trade-name of plaintiff or that it had any knowledge of the existence of any such trade-name at the time it originated the name of "Stag" or the use of the stag's head design for its beer. It alleged that its trade-mark "Stag" and stag's head design was registered by it with the Secretary of the State of Minnesota, and registered with the secretaries of the States of Michigan, Iowa and South Dakota, and that under such registrations it had the sole and exclusive right to the use of such trade-mark and trade-name in each of said states.

On the controverted issues the court found substantially as follows: (1) That plaintiff was the owner of certificate of trade-mark registration issued by the Commissioner of Patents of the United States on January 1, 1935, for the trade-mark "Stag" and stag's head for beer; (2) that it was the owner of certificates of label registrations for labels created, designed and used by it on its "Stag" beer, which were copyrighted under the laws of the United States under date March 10, 1908, and June 23, 1936; (3) that plaintiff began to use the trade-mark "Stag" on beer in 1908 and since that time has from time to time sold and advertised its "Stag" beer product in the States of Missouri, Kansas, Arkansas, Oklahoma, Texas, Tennessee, Georgia, Alabama, Mississippi, Louisiana, Iowa, and Illinois; (4) that defendant originated the name "Stag" for beer in the State of Minnesota in the year 1938, when it commenced to use said trade-mark without knowledge or information of the prior use thereof by plaintiff, and that continuously since that time its "Stag" beer has been advertised extensively and sold in the Duluth trade territory within a radius of approximately 150 miles of the City of Duluth in Minnesota and northern Wisconsin; (5) that defendant had never advertised nor sold any of its "Stag" beer in any of the above named states where plaintiff has advertised and sold its "Stag" beer, and plaintiff has never either advertised nor sold any of its "Stag" beer in the States of Minnesota, Wisconsin, Michigan, North Dakota or South Dakota; (6) that plaintiff and defendant are not now and never have been in competition with each other, and that plaintiff has never advertised nor sold any of its "Stag" beer in any market where defendant has advertised or sold its "Stag" beer, or any market adjacent thereto, and defendant has never advertised nor sold its "Stag" beer in any market where plaintiff has sold or advertised its "Stag" beer, or any market adjacent thereto; (7) that the market in which plaintiff has advertised and sold its "Stag" beer and the market in which defendant has advertised and sold its "Stag" beer are wholly remote the one from the other, and plaintiff has no property rights in the trade-name of "Stag" for beer in the markets wherein defendant has advertised and sold its "Stag" beer, or in markets adjacent thereto, and defendant has no property rights in the trade-mark "Stag" in markets wherein plaintiff has

advertised and sold its "Stag" beer, or in markets adjacent thereto; (8) that each of the parties has built up a business and valuable good will under the trade-mark "Stag" for beer in the markets wherein it has advertised and sold beer under that name; (9) that the use of the trade-mark "Stag" or stag's head design, or any "Stag" label by plaintiff, or the use of the trade-mark "Stag" or stag's head design, or any "Stag" label by defendant, has at no time caused any confusion in the trade or misled or caused any purchaser or induced anyone to buy any of the "Stag" beer product of either of the parties as the product of the other; (10) that plaintiff has made no plans to enter the Duluth trade territory or the State of Minnesota, or the States of Wisconsin, Michigan, North Dakota, or South Dakota for the advertisement and sale of its "Stag" beer and has taken no steps to enter such territory, has made no investments, and has done nothing looking toward the extension of its trade into such trade territory; (11) that defendant has sold none of its "Stag" beer in the State of Iowa and has no property rights in the trade-mark "Stag" in that state, and that neither of the parties has sold any of its product in the States of Michigan, North Dakota, or South Dakota, and neither has any property rights in the trade-mark "Stag" in either of said states.

In seeking reversal plaintiff contends that: (1) The "Stag" label used by defendant is an imitation and copy of the general appearance of plaintiff's copyrighted "Stag" label for beer; (2) that the trade-mark "Stag" and stag's head used by defendant on beer is identical to and an infringement upon the trade-mark "Stag" and stag's head on beer in prior use, owned and registered by plaintiff; (3) that the State of Minnesota is not a separate market wholly remote from the States of Illinois and Iowa, and that defendant selected plaintiff's "Stag" trade-mark and label to forestall the extension of plaintiff's trade; (4) that in view of the later adoption by defendant of the trade-mark and the imitation by it of plaintiff's copyrighted label, it is not necessary for plaintiff to prove fraudulent intent nor to prove actual deception of consumers.

■ The findings of the court are presumptively correct and should not be set aside nor disturbed unless clearly erroneous. Rule 52, Rules of Civil Procedure, 28 U.S.C.A. following section 723c;

Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1. A study of the record discloses that there was little or no conflict in the evidence. So far as these findings reflect primary facts as distinguished from inferences or conclusions, we think they are sustained by abundant evidence.

■ For the purpose of this opinion we shall assume without deciding that the "Stag" label and stag's head design adopted and used by defendant are sufficiently similar in general appearance, size, shape, style and color as to give rise to confusion as to the origin or ownership of the product to which they are affixed if the products of plaintiff and defendant were being sold or offered for sale in the same market or competitive territory. Plaintiff's trade-marks have doubtless come to indicate the origin or ownership of its product to which they are affixed in the territory where its product has been advertised and sold, but the mere registration of a trade-mark does not in itself confer any greater rights than existed at common law without registration. The registration of a trade-mark is a method of recording for the protection of dealers, the public and owners of trade-marks. But the trade-mark, not being created by registration, is inseparable from the good will of the business of its possessor. The right to its exclusive use is bottomed on priority of appropriation. Hanover Star Mill. Co. v. Metcalf, 240 U.S. 403, 36 S. Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Esso, Inc., v. Standard Oil Co., 8 Cir., supra; Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956. The right to the exclusive use of a trade-mark or trade-name is limited to the territory or market wherein it has become established by use in such territory. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650; United Drug Co. v. Theodore Rectanus Co., supra; Hanover Star Mill. Co. v. Metcalf, supra. The mere adoption of a trade-mark does not have the effect of preempting and preserving as a claim of territorial rights over territories into which the owner may thereafter desire to extend his trade. It is only where the trade goes attended by the use of the mark that the right of the owner of the trade-mark is protected as against the sale by others of their product similarly labeled. A trade-mark can not

be divorced from the good will of its owner, and it confers no right in the abstract. As said by us in Walgreen Drug Stores v. Obear-Nester Glass Co., supra [113 F.2d 960]:

"A trade-mark is inseparable from the good will of the business of its possessor and it exists only as an incident to the business in which it was lawfully acquired and with which it remains identified."

The law of trade-marks is a branch of the law of unfair competition. Here defendant adopted its trade-mark in good faith and without knowledge or information of its prior use by plaintiff. Defendant's product has not as yet come into competition with that of plaintiff. There could therefore be no unfair competition, and equity will not protect a trade-mark against alleged infringement unless there has been some user in the disputed territory.

Plaintiff urges that the territory in which it has established its trade is not remote from the trade territory in which defendant is using its accused trade-mark. We think the contention is not well founded. The nearest trade territory of plaintiff lies in southern Illinois and southern Iowa, while the trade territory of defendant is embraced within a radius of 150 miles of the City of Duluth, Minnesota. Apparently these territories are geographically more than 500 miles apart, so that the market of each is remote from that of the other. General Baking Co. v. Goldblatt Bros., 7 Cir., 90 F.2d 241.

Our conclusion on this phase of the case renders it unnecessary to consider plaintiff's other contentions. The judgment appealed from is therefore affirmed.